Argued February 23; affirmed March 14; rehearing denied
March 28, 1939

## AETNA LIFE INSURANCE CO. *v.* McMONIES

(88 P. (2d) 290)

Department 2.

*McDannell Brown*, of Portland, for appellant.

*James Dezendorf*, of Portland (Dey, Hampson &
Nelson and Andrew Koerner, all of Portland, on the
brief), for respondent.

RAND, C. J. This is a suit of interpleader brought by the Aetna Life Insurance Company to have judicially determined whether a policy for $15,000, issued by it on May 7, 1925, on the life of Bernard L. Metzger, now deceased, is payable to the executor under his will or to Lillian Metzger, his former wife who had divorced him. The insured money was deposited into the custody of the court and, at the determination of the suit, the money was awarded to the executor. From this decree, Mrs. Metzger has appealed.

It is undisputed under the evidence that the Metzgers intermarried in February, 1921; that she divorced him on November 15, 1928, and that both parties have remained single ever since; that Metzger died on January 25, 1938; and that shortly prior to the entry of the divorce decree and on October 31, 1928, a property settlement agreement was entered into between them under which the home property, household goods, furniture and fixtures were given to her outright and it was agreed that, as long as she remained single, she was to be paid $200 per month for her support. In addition thereto, the contract further provided:

"Within fifteen days from the date of this agreement the said B. L. Metzger agrees to deliver over to the said Lillian Metzger, policies of life insurance on the life of the said B. L. Metzger, in the sum of $30,-000.00, and the said B. L. Metzger agrees to cause to be given to the insurance companies carrying said policies, irrevocable instructions to the effect that the beneficiary in said policies, to wit: Lillian Metzger, shall not be changed until such time as the said Lillian Metzger remarries, if she does; the said Lillian Metzger hereby agreeing that she will provide for the said insurance companies irrevocable instructions that in the event of her remarriage, the beneficiary may be changed in said policies, and in the event of such re-

marriage, it is agreed that the said B. L. Metzger shall have the full and complete authority to name, in said policies, such beneficiaries as he may wish.''

Both at the time this agreement was entered into and at the time of his death, Metzger was the life owner of five life insurance policies aggregating the sum of $45,000, payable at his death, one issued by the Penn Mutual for the sum of $10,000, two issued by the Travelers Insurance Company for $2,500 each, one issued by the Artisans for $15,000, and the Aetna Life Insurance policy for $15,000. The policies which were intended to make up the sum of $30,000 were not designated in the contract by name, nor was there any discussion by the Metzgers as to what particular policies should be included in making up that amount. The only reference thereto in the contract is that they shall aggregate the sum of $30,000. Pursuant to said contract, Metzger delivered all the policies above referred to except the Aetna policy, of which policy Mrs. Metzger had no knowledge of its existence until about the time of his death. However, Metzger treated the Aetna policy as one of those going to make up said sum. This appears from Executor's Exhibit No. 2, a letter written by Metzger to plaintiff's attorney on November 21, 1928, and also from the instructions given by Metzger to the Aetna Life Insurance Company, pursuant to which it made the following indorsements on that policy:

''The net sum payable by the Company under this policy by reason of the death of the insured is hereby made payable to Lillian Metzger, former wife of the insured, if she survives the insured and satisfactory proof of her remarriage has not been received at the Home Office of the Company, otherwise to the executors, administrators or assigns of the insured.

Hartford, Connecticut, this 2nd day of January, 1929.

"ANY LANGUAGE IN THIS POLICY TO THE CONTRARY NOTWITHSTANDING, the life owner shall not receive any benefit or exercise any option or privilege under this policy during the lifetime of Lillian Metzger, former wife of the insured, without her written consent unless satisfactory proof of her remarriage has been received at the Home Office of the Company.

Hartford, Connecticut, this 2nd day of January, 1929.

AETNA LIFE INSURANCE COMPANY."

So far as the face of the policy shows no subsequent indorsements were made thereon by the insurer. However, growing out of some controversy which arose between the Metzgers, and the bringing of an action by her against him, a new contract was entered into between the parties and the original property settlement agreement entered into by them on October 31, 1928, was mutually cancelled and rescinded and, in lieu thereof, a new contract, settling all their differences, was entered into.

Under the new contract, it was agreed that Metzger was to pay to Mrs. Metzger the sum of $9,900, payable in monthly payments of not less than $200 per month commencing with the month of February, 1934, and continuing until said sum had been paid, and it is admitted by all parties that this provision of the contract has been fully complied with and that the sum of $9,900 has been fully paid and that obligation discharged.

As security for the payment of said sum of $9,900, the contract provided that Metzger should

"continue in force the policies of life insurance on his life in the sum of $20,000.00 in which second party has heretofore been designated beneficiary, and which said

policies have been delivered into the possession of second party. * * * that he will pay all gross premiums due on said policies on or before fifteen days prior to the time when the same shall become in default, and to keep the receipts showing payments of said premiums and deliver the same to second party upon demand. * * * Upon the death of the first party (Mr. Metzger) the second party (Mrs. Metzger) shall be entitled only to such portion of the policies of said life insurance as shall equal the present worth computed at 6% of the unpaid balance due under the terms of this agreement, and all of the Companies issuing said policies shall pay no greater than their pro rata share of such sum to second party.

"Upon the full performance of this contract and the payment of all sums provided for herein the second party agrees to deliver said policies to the first party and to execute such release or releases and consent or consents to change the beneficiary as the first party may be required to furnish to the respective insurance companies, to change the beneficiaries under said policies, or to secure the cash surrender value thereof."

Then follows the provision that Metzger should continue the Penn Mutual policy in the sum of $10,000 in force, deliver said policy into the possession of Mrs. Metzger and that, unless she should remarry, all sums due and collectible thereunder, should belong absolutely to her.

In compliance with this latter agreement, the same policies that had been delivered to her under the first agreement were turned over to her and, upon payment of the $9,900 being made, all said policies so delivered to Mrs. Metzger were returned by her to the executor herein and are now in his possession unless the sums due thereunder have been previously collected by the executor. The Penn Mutual policy, however, was retained by Mrs. Metzger and, so far as the evidence

shows, the amount due thereunder, upon Metzger's death, has been collected and received by her. In the second, as in the first contract, there was no designation by name of any of the policies which were to be delivered to her as security for the payment of said sum. However, Metzger, although not turning over to her the Aetna policy, treated the same as one of the policies which were to be included in making up the amount of the policies in the sum of $20,000, and on January 14, 1936, he enclosed a copy of the new contract to the Aetna Life Insurance Company and wrote them as follows:

"Lillian Metzger was named as beneficiary in this policy and continues to be the beneficiary pursuant to the provisions of a property settlement agreement which I entered into with her on March 19, 1934. A photostatic copy of this agreement is enclosed herewith and you will note therefrom that Lillian Metzger's only interest in said policy and the proceeds therefrom in the event it becomes a death claim, is to secure to her the payment of the sum of $9,900.00, as therein mentioned.

"Your particular attention is called to paragraph (2) of said agreement, which provides that upon my death Lillian Metzger shall be entitled to only such portion of the proceeds of said policy and the other policies therein mentioned as shall equal the then worth of the unpaid balance due under the agreement. Upon my death, you are hereby directed not to pay any of the proceeds of the said policy, to Lillian Metzger until there has been submitted to you satisfactory evidence showing the amount still unpaid, pursuant to said contract, and then you are only to pay your proportionate share of said amount.

"I also invite your attention to paragraph (3) of said agreement covering the cash value of the policy and the accumulated dividends thereon. Should Lillian Metzger demand payment to her of said cash value,

I direct that you do not accede to her demand until and unless you are satisfied that I am in default under said contract and that the cash value of your policy, together with the cash value of the other policies therein mentioned, shall not exceed the balance still due under the contract.

"Will you be so kind as to acknowledge receipt of this letter and of the enclosure."

Because the Aetna policy was not delivered to Mrs. Metzger and was not specifically referred to by name in the last contract, Mrs. Metzger contends that it was not one of the policies given to her as security for the payment of the sum of $9,900, and that, since she was originally designated in the policy as beneficiary and no indorsement had been made thereon changing the beneficiary, except as above referred to, she is entitled to be paid the proceeds of said policy.

The Aetna policy provides, among other things, the following:

"During the lifetime of the insured, the right to receive all cash values, loans and other benefits accruing hereunder, to exercise all options and privileges described herein and to agree with the Company to any change in or amendment to this policy shall vest alone in the insured, (herein called the life owner), subject, however, to any assignment by said life owner.

"The beneficiary may be changed as often as desired, and such change shall take effect on receipt at the Home Office of the Company, before the sum insured or any instalment thereof becomes due, of a written request accompanied by the policy for endorsement."

Under these provisions, Metzger was entitled to change his beneficiary at will and, in his letter of January 14, 1936, quoted above, he instructed the insurer that Mrs. Metzger's sole interest under that policy was

to have it continued in force and payable to her only as security for the payment of the $9,900, which he had promised to pay to her. We think that legal effect must be given to those instructions, and that Mrs. Metzger's rights to share in the proceeds of that policy terminated upon payment to her of the sum of $9,900 and, hence, whether the Aetna policy was subject to the last contract or not is of no importance, for, if subject to the contract, her rights under that policy have ceased, and, if not subject to the contract, her rights as beneficiary under the policy were changed to conform to the instructions he gave to the insurer that she was not to be paid anything under the contract except as security for the payment of the stipulated amount. Hence, in either event, she is not entitled to recover the moneys now in the custody of the court below.

Again, under the new contract, Metzger made an absolute gift to her of the proceeds payable under the Penn Mutual policy. If he had intended to make a like gift to her of the proceeds payable under the Aetna policy, it is only reasonable to suppose that the contract would have so provided. To now hold that it was the intention of the Metzgers that the Aetna policy was also intended as a gift to her would require the court to insert into the contract a provision that it does not contain and to deny to Metzger the right, which he possessed at the time he wrote the insurer, to change his beneficiary as he saw fit.

For these reasons, the decree appealed from must be affirmed, and it is so ordered.

BELT, BAILEY and LUSK, JJ., concur.